TECHNOLOGY INNOVATION CENTER, INC., d/b/a Evanston Business and Technology Center, Plaintiff-Appellee, v. ADVANCED MULTIUSER TECHNOLOGIES CORPORATION *et al.*, Defendants-Appellants (James T. Murray, Indiv., Respondent-Appellee).

First District (3rd Division)    No. 1—99—0364

Opinion filed June 30, 2000.

Douglas R. Cannon, of Skokie, for appellants.

Elliot R. Schiff, of Schiff, Gorman & Krkljes, of Chicago, for appellee James T. Murray.

James T. Hultquist and John A. Berg, both of Brand & Novak, Ltd., of Chicago, for appellee Technology Innovation Center, Inc.

JUSTICE WOLFSON delivered the opinion of the court:

This started out as a forcible entry and detainer case. It turned into a rancorous Supreme Court Rule 137 (134 Ill. 2d R. 137) sanctions proceeding that took on a life of its own. All in all, it has bounced around in our judicial system for more than seven years. Hopefully, with this opinion, we now put an end to it.

Advanced Multiuser Technologies (AMT), Carole Pickelsimer (Pickelsimer), and Douglas Cannon (Cannon) (collectively referred to as defendants) appeal from the trial court's denial of their petition for sanctions brought pursuant to Supreme Court Rule 137 and their petition for costs brought pursuant to statute (735 ILCS 5/9—114 (West 1992)), in relation to a 1993 forcible entry and detainer action.

Defendants contend: (1) the trial court's denial of sanctions should be reversed under a *de novo* standard of review, (2) the trial court improperly failed to consider defendants' statutory claim for costs, (3)

the trial court improperly refused to consider defendants' motion for contempt, and (4) the trial court failed to consider the entire record before making its ruling. We affirm, with a modification.

## Facts

In February 1991, AMT entered into an oral lease to rent office space from Technology Innovation Center, Inc. (TIC). In March 1993, TIC, through its attorney, James T. Murray (Murray), demanded past-due rent from AMT and notified AMT that its lease would be terminated, pursuant to section 9—209 of the Code of Civil Procedure (735 ILCS 5/9—209 (West 1992)), if rents owed were not paid within a five-day period. Thereafter, on April 29, 1993, TIC filed a complaint against "Carol J. Pickelsimer and Douglas R. Cannon d/b/a Advance Multiuser Technologies," seeking possession of the premises described as office space No. 104, 1840 Oak Avenue, Evanston, Illinois. TIC also sought recovery of $11,534.43 in unpaid rent and expenses. The complaint noted Pickelsimer and Cannon had previously signed personal guarantees which made them responsible for "the full and timely payment of all rent and other amounts of any kind whatsoever that may now be due and payable or that may at any time or from time to time hereafter become due and payable."

Cannon, the vice president and registered agent of AMT, filed a special and limited appearance to present a motion to dismiss. Cannon did not dispute that money was owed to TIC, but contended:

"The rent claimed by plaintiff on its 5-day notice includes charges for telephone service, shared secretarial service, xerox copying, facsimile machine services, certain parking fees, interest, late charges and other miscellaneous fees which are not rent but are added to plaintiff's claimed total."

Cannon admitted he and Pickelsimer signed guarantees, but claimed they were made in reference to "an oral year-to-year lease" so that the five-day notice was defective. Cannon also claimed he and Pickelsimer were not proper parties to a forcible entry and detainer action because AMT is a registered corporation.

On July 14, 1993, TIC served a new five-day notice on AMT. TIC then amended its complaint on July 20, 1993, adding AMT as a party defendant. In this complaint TIC alleged in count I that AMT was unlawfully withholding possession of office space No. 104 at 1840 Oak Avenue, Evanston, Illinois, after a demand was made for "$13,188.84 representing rents over six months in default." In count II, TIC added a claim against Pickelsimer and Cannon for rent and services based on their personal guarantees.

After a hearing, count II against Pickelsimer and Cannon was dismissed without prejudice on October 18, 1993. The claim against AMT was set for trial.

On January 14, 1994, TIC filed a second amended complaint. In this complaint, TIC repled count I from the previous complaint. A new count II was pled in the alternative. In count II, TIC alleged 30 days had elapsed since "defendant was given notice of the termination of its tenancy of the aforesaid space pursuant to the statute thereto pertaining in the Illinois Compiled Statutes, Section 835, 9—207 [sic], on or about December 1, 1993." In count III, TIC brought an action for rents and charges against AMT.

Cannon, acting as legal counsel for AMT, moved to dismiss the second amended complaint. With regard to count II, Cannon alleged the 30-day notice was defective because he, as registered agent for AMT, had not received the notice of termination until December 3, 1993. He further alleged the letter of termination dated December 1, 1993, was deposited in AMT's mailbox without a postmark.

TIC responded to this motion. One argument advanced by TIC was that no notice to quit was required to bestow jurisdiction because AMT was a tenant at sufferance (see 735 ILCS 5/9—213 (West 1992)) and because AMT was more than 18 months in arrears (see 735 ILCS 5/9—204 (West 1992)). Several exhibits were attached to the response, including letters to AMT, dated as far back as November 1992, notifying AMT of its failure to meet its obligation to pay rent and expenses. Exhibit E to the response consisted of a copy of the letter of termination of tenancy dated December 1, 1993, and a certification, signed by James S. Currie, TIC's managing director, stating that Currie had deposited the termination letter in AMT's corporate pigeonhole mailbox on December 2, 1993.

The second amended complaint was dismissed on March 21, 1994, for lack of jurisdiction.[1]

On April 20, 1994, defendants filed a petition for sanctions against TIC and Murray pursuant to Supreme Court Rule 137. Defendants also sought costs as provided by statute. See 735 ILCS 5/9—114 (West 1992). A supplemental petition for sanctions was filed on July 18, 1994, listing additional costs and fees.

On May 11, 1995, the trial court dismissed defendants' petitions for sanctions. Defendants appealed and we disposed of the appeal (see *Technology Innovation Center, Inc. v. Advanced Multiuser Technologies Corp.*, No. 1—95—2025 (1996)), by summary order issued pursuant to Supreme Court Rule 23(c)(2). Without suggesting any particular outcome, we remanded the case to the trial court for reconsideration because we were unable to ascertain from the record whether the trial court had given serious consideration to the issues raised in the Rule 137 petition.

---

[1]AMT was eventually evicted by TIC in a separate action.

After remand, defendants filed a second supplemental petition for sanctions in the trial court on January 14, 1997. Defendants asked the court to fine TIC and Murray $1,842,000 for alleged misconduct. This amount was in addition to the alleged $67,808.09 in costs and expenses defendants sought in their sanctions petition.

On February 6, 1997, TIC and Murray moved to strike and dismiss defendants' petition for sanctions and all supplements to the petition. On February 25, 1997, the trial court denied the motions to dismiss and reopened discovery.

After taking depositions and obtaining answers to interrogatories, defendants sought leave on August 27, 1997, to file a first amended petition for sanctions. In this amended petition defendants added a new claim of misconduct against TIC and Murray. Defendants also sought to supplement the first amended petition with additional "time, fee, and cost calculations."

Concurrent with their motion to amend the petition for sanctions, defendants filed two related motions: (1) a September 5, 1997, motion for hearing to determine the appropriate action for contempt against respondents and other parties, directed against TIC and Murray and based on their alleged failure to produce certain documents in discovery; and (2) an October 22, 1997, motion for a finding of direct criminal contempt, directed against the attorneys then representing TIC and Murray, based on their alleged misrepresentations of fact. Both of these motions were denied on February 24, 1998. Also on this date, the trial court denied defendants' request for leave to file the first amendment to their sanctions petition.

On March 26, 1998, defendants moved to file a revised first amendment to petition for sanctions. Murray and TIC moved to strike this motion on April 23, 1998, and April 27, 1998, respectively.

On June 17, 1998, the trial court held a hearing. The court dismissed with prejudice defendants' revised amendment and all other petitions for sanctions. The trial court then granted Cannon leave to make an oral motion to reconsider and set the matter for hearing on July 28, 1998.

On July 22, 1998, the court issued an order stating: "All such matters to be heard and motions pertaining thereto are continued to and shall be heard on September 3, 1998."

On September 3, 1998, defendants filed a written motion to clarify and/or reinstate attached to 147 pages of exhibits. Exhibit E (116 pages) contained five offers of proof. On the same date, the court accepted these submissions to be taken under advisement and continued the matter.

On November 18, 1998, the trial court heard oral argument on

defendants' offers of proof. In addition, the court allowed defendants to file, on December 2, 1998, additional written offers of proof and an abstract of evidence.

At a hearing on December 18, 1998, the trial court again dismissed defendants' revised first amendment and all other sanction petitions with prejudice. Defendants filed a notice of appeal on January 19, 1999.

## Decision

Defendants ask this court to review the dismissal of their petitions for Rule 137 sanctions, the dismissal of their motions for contempt, and the dismissal of their request for statutory costs. Defendants contend the trial court improperly dismissed the long-standing petition for sanctions at a time when the only matter before the court was the defendants' ability to add a new claim in the revised amendment to the petition for sanctions. Defendants also claim the trial court failed to fully comply with the appellate court mandate.

### Dismissal of Rule 137 Petition

Defendants call for *de novo* review of the dismissal of their Rule 137 sanctions petitions. Defendants contend *de novo* review is proper because TIC and Murray, in opposing the Rule 137 petition for sanctions, filed motions to dismiss under section 2—615 of the Code of Civil Procedure (see 735 ILCS 5/2—615 (West 1992)) and the trial court dismissed the petitions when ruling on these motions.

We disagree with defendants' assessment of the posture of this case. A Rule 137 petition is part of the underlying action and not a separate action, though it might be viewed as a "claim" that is separate from the main relief. *Hager-Freeman v. Spircoff*, 229 Ill. App. 3d 262, 273, 593 N.E.2d 821 (1992). Despite the labeling of the motions by TIC and Murray, the only matter before the trial court was whether Rule 137 sanctions could properly be imposed under the facts of this case. We see no reason to limit our review to technical rules of pleading where it is clear the trial judge was basing his judgment on the entire record.

When a party asks that Rule 137 sanctions be imposed, that party bears the burden of proof. *Yassin v. Certified Grocers of Illinois, Inc.*, 133 Ill. 2d 458, 467, 551 N.E.2d 1319 (1990). The party petitioning for sanctions must show the opposing party made untrue and false allegations without reasonable cause. *In re Estate of Wernick*, 127 Ill. 2d 61, 77, 535 N.E.2d 876 (1989). The trial court must then decide whether the allegations in the underlying complaint were warranted by existing law or a good-faith argument for a change in existing law, or whether the allegations were merely meant to harrass or unduly delay

the proceedings. *Casey v. Jerry Yusim Nissan, Inc.*, 296 Ill. App. 3d 102, 107, 694 N.E.2d 206 (1998). The attorney's conduct must be assessed by an objective standard; subjective good faith is not sufficient. *Burrows v. Pick*, 306 Ill. App. 3d 1048, 1051, 715 N.E.2d 792 (1999).

■ The decision to grant or deny sanctions under Rule 137 is entrusted to the sound discretion of the trial court, to be overturned only when it appears from the record the court abused its discretion. *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 693 N.E.2d 358 (1998); *Fischer v. Brombolich*, 246 Ill. App. 3d 660, 664, 616 N.E.2d 743 (1993). A trial court's determination is afforded considerable deference, but it does not preclude a reviewing court from independently reviewing the record and finding an abuse of discretion if the facts warrant. *Pritzker v. Drake Tower Apartments, Inc.*, 283 Ill. App. 3d 587, 670 N.E.2d 328 (1996).

A trial court abuses its discretion when its finding is against the manifest weight of the evidence (*In re Estate of J.M.*, 287 Ill. App. 3d 110, 678 N.E.2d 15 (1997) or if no reasonable person would take the view adopted by it (*Fremarek v. John Hancock Mutual Life Insurance Co.*, 272 Ill. App. 3d 1067, 651 N.E.2d 601 (1995)).

■ Because Rule 137 is penal in nature, it must be strictly construed, with each element of a violation specifically proved. *In re Estate of J.M.*, 287 Ill. App. 3d at 116. When reviewing a decision on a motion for sanctions, the primary consideration is whether the trial court's decision was informed, based on valid reasoning, and follows logically from the facts. *Thomas Hake Enterprises, Inc. v. Betke*, 301 Ill. App. 3d 176, 182, 703 N.E.2d 114 (1998).

The allegations of sanctionable conduct we are asked to review were first presented in defendants' petition for sanctions on April 20, 1994. They are as follows: (1) false pleading—TIC alleged AMT had entered into a written lease when no written lease existed; (2) false pleading—TIC and Murray falsely pled in the second amended complaint, filed on January 14, 1994, that AMT was given a 30-day notice to vacate premises pursuant to section 9—207 (735 ILCS 5/9—207 (West 1992)), when they knew the letter notice dated December 1, 1993, was not delivered until December 2, 1993, and, consequently, there was no jurisdiction; (3) no reasonable inquiry into facts or existing law—by filing suit against Pickelsimer and Cannon instead of the AMT corporation and by relying on personal guarantees, Murray failed to make a reasonable inquiry into the facts and the law concerning forcible entry and detainer actions; and (4) misrepresentation—an account ledger (referred to as the "AMT ledger"), which was submitted as an exhibit to show the amount of rent owed by AMT, was not a business record kept in the normal course of business but, instead, an

accounting prepared by Murray that misallocated payments to support TIC's claim that back rent was owed.

After reviewing the many volumes of record, we conclude only one of these allegations merits our consideration—the allegation that Murray averred in the second amended complaint that a 30-day notice to vacate had been given AMT in accord with section 9—207 of the Forcible Entry and Detainer Act (735 ILCS 5/9—207 (West 1992)), knowing the notice was deficient because the December 1, 1993, letter to vacate as of December 31, 1993, was not delivered until December 2, 1993.

Though both TIC and Murray deny their conduct was sanctionable, neither party attempts to offer a sensible reason for filing this pleading when it was apparent the jurisdictional notice was deficient. Murray had to know, or should have known, that a notice to vacate on the thirty-first day of the month delivered on the second day of the month does not afford the necessary 30 days' notice and, consequently, fails to furnish the court with jurisdiction.

The closest thing we could find to an explanation was Murray's affidavit, filed June 13, 1994, in opposition to the petition for sanctions. In this affidavit Murray stated the allegation in the second amended complaint that notice had been given "on or about December 1, 1993," was not a deliberate attempt to deceive or mislead the court, but "an error occasioned by inadvertence or editing oversight." He also said it was clear he was not trying to mislead the court since Currie's affidavit, submitted in opposition to AMT's motion to dismiss, clearly showed notice was delivered on December 2, 1993.

Though it may be true that, subjectively, TIC and Murray did not act in bad faith, the standard by which a court must measure an attorney's conduct is an objective one. It is of little consequence "that an attorney 'honestly believed' his or her case was well grounded in fact or law." *Fremarek v. John Hancock Mutual Life Insurance Co.*, 272 Ill. App. 3d at 1074-75. Thus, it seems clear that count II of the second amended complaint was a false or erroneous pleading. The question remains, however, whether sanctions should be awarded due to the filing of this pleading.

The trial court, when deciding to deny the petition for sanctions, did not address each allegation of misconduct individually to determine whether defendants had met their burden of proving false pleadings or misrepresentations. Instead, the court spoke in generalities about whether sanctions were warranted.

On June 17, 1998, the trial court said:

"So what I'm really called upon to do is, taking into consideration all of the facts and circumstances as they have been presented, the

case law, is to make a determination considering everything in the light most favorable to the movant. And that's the way in which I'm viewing everything."

The trial court then found there was an "insufficient basis to proceed for sanctions."

When defendants complained they did not receive a full hearing on all the allegations of sanctionable conduct raised in their original petition, the court agreed to hear a motion for reconsideration and accepted offers of proof and abstracts of evidence. After doing so, the trial court reaffirmed its earlier decision to deny sanctions, stating:

"Serious attention has been given by me to the issues raised and I find that while nobody is going to be perfect in any litigation or case, that there is nothing here that requires or suggests the need for Rule 137 sanctions; and I believe it would be inappropriate here."

■ Based on the record before us, we can be sure the trial court was fully aware of all claims of sanctionable conduct. We know the deficient notice pleading claim was included in the offers of proof, abstract of evidence, and other materials submitted to the trial court for review with the motion for reconsideration.

We know, too, the trial court gave serious consideration to the charges of misconduct. After remand, the trial court, in a fit of excessive generosity, reopened discovery and allowed defendants, over a span of two years, every opportunity to make their case for sanctions.

Based on the trial court's comments, we think the court, aware of the entire history of the case, denied sanctions because it found, in balance, any wrongdoing by Murray did not warrant sanctions. That decision does not constitute an abuse of the trial court's discretion.

Our review of the record persuades us it was the defendants' conduct that stretched this litigation beyond the boundaries of reason—in time, effort, and expense. At some point this case stopped being the simple legal dispute it should have been and became a one-sided war of attrition. Motions directed at TIC and Murray became offensive weapons. The discovery process was abused. The judge too-patiently heard and reheard oral arguments. We understand and share the trial judge's reluctance to reward the defendants' behavior.

## Dismissal of Petition for Statutory Costs

■ Our review of the record reveals the trial court neglected to address defendants' separate statutory claim for costs. The law provides that "costs shall be entered in favor of the defendant" if the plaintiff fails to prove its right to possession in a forcible entry and detainer action. 735 ILCS 5/9—114 (West 1994). Since the forcible entry and detainer actions against AMT, Pickelsimer, and Cannon were dismissed, defendants are entitled to statutory costs.

In defendants' petition, costs were set at $467. We now enter an order awarding defendants $467 in costs.

## Motion for Contempt

■ After remand, the trial court reopened discovery in this case. Defendants filed interrogatories, demanded documents, and took depositions. At this time, defendants received from TIC and Murray certain documents, which AMT's counsel (Cannon) believed should have been produced in response to court order issued January 4, 1994. Defendants then filed a "Motion for Hearing to Determine Appropriate Action for Contempt Against Respondent and Other Parties."

The trial court denied the motion with prejudice by order dated February 24, 1998. There is no transcript of any hearing on that date.

Although we do not have the benefit of the trial court's reasoning for denying the motion, we find the trial court did not err when it dismissed the motion for a finding of contempt.

A party is in contempt of court when it willfully violates an order of the court. *Fidelity Financial Services, Inc. v. Hicks*, 267 Ill. App. 3d 887, 642 N.E.2d 759 (1994). Whether and on what grounds a party is guilty of contempt and the decision whether or not to punish a contemnor rest within the sound discretion of the circuit court, "whose decision should not be reversed except if grossly abused." *In re Marriage of Hartian*, 222 Ill. App. 3d 566, 570, 584 N.E.2d 245 (1991).

In this case, defendants were asking the court to impose a fine based on TIC's and Murray's alleged failure to comply with a discovery order entered four years earlier. We find no abuse of discretion in the trial court's refusal to grant the motion for a finding of contempt.

## Trial Court's Compliance with Appellate Mandate

■ Defendants contend the trial court failed to review the entire record before denying Rule 137 sanctions and thus failed to follow this court's mandate. We disagree.

The summary order issued by this court on June 24, 1996, stated, "this cause is remanded to the trial court for consideration of the motions to strike and dismiss."

We sent this case back to the trial court to ensure serious consideration was given to the defendants' false-pleading claims. We never intended or expected the case to go any further than that. Instead, the trial court reopened discovery. It is clear the trial court gave defendants every opportunity to make their case for sanctions. Though the trial court made reference to reading "400 pages of record," which is only a small portion of the record, after that comment the court accepted written and oral offers of proof as well as abstracts of the evidence in support of those claims. We have no doubt the trial

court was fully apprised of all the evidence concerning the claims of sanctionable conduct raised by defendants.

## Conclusion

We affirm the trial court's denial of Rule 137 sanctions and its refusal to hold plaintiffs in contempt.

We grant defendants' petition for costs pursuant to section 9—114 of the Forcible Entry and Detainer Act (735 ILCS 5/9—114 (West 1992)) and award defendants $467 for costs.

Affirmed and modified.

CAHILL, P.J., and BURKE, J., concur.