2022 IL App (1st) 201314-U

No. 1-20-1314

Order filed March 17, 2022

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| BARA CHICAGO, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
|     Plaintiff and Counterdefendant, | ) | Cook County. |
| | ) | |
|   v. | ) | No. 14 CH 13945 |
| | ) | |
| THE BIG CHEESE WRIGLEYVILLE, LLC, and 3401 N. CLARK, LLC, | ) | |
| | ) | |
|     Defendants | ) | |
| | ) | |
| (The Big Cheese Wrigleyville, LLC, Defendant and | ) | |
| Counterdefendant, 3401 N. Clark, LLC, Defendant, | ) | |
| Counterplaintiff and Third-Party Plaintiff-Appellant, | ) | |
| Travis Burke, Third-Party Defendant, Vivek Jayaram, | ) | Honorable |
| Nonparty-Appellee, and Jayaram Law, Inc., Nonparty- | ) | John J. Curry, |
| Appellee). | ) | Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court.
Justices Rochford and Martin concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Where the property owner alleged that the construction general contractor, its
principal, and their counsel knowingly or recklessly used a falsified invoice to

substantiate a false mechanics lien claim, the trial court did not abuse its discretion when it denied the property owner's posttrial motion for sanctions against the construction general contractor, its principal and their counsel.

¶ 2    In this dispute involving a mechanics lien claim by a construction general contractor against a commercial property owner, the trial court ruled against the general contractor and awarded the property owner its attorney fees and costs. However, when the property owner moved posttrial for sanctions against the general contractor, its principal, and their counsel, the trial court denied that motion.

¶ 3    On appeal, the property owner argues that the trial court abused its discretion by denying the motion for sanctions because the evidence showed that the general contractor, its principal, and their counsel intentionally or recklessly pleaded false matters and the trial court's explanation for why their conduct was not fraudulent was not plausible.

¶ 4    For the reasons that follow, we affirm the judgment of the circuit court.[1]

¶ 5                                I. BACKGROUND

¶ 6    This appeal arises from a mechanics lien claim plaintiff/counterdefendant Bara Chicago, LLC, (Bara), a construction general contractor, recorded in 2014 against a commercial property owned by defendant/counterplaintiff/third-party plaintiff 3401 N. Clark, LLC (3401). Bara claimed that it was owed $98,640 for construction work it performed at a restaurant on the property. That alleged debt arose from a fast food franchise business venture undertaken by defendant/counterdefendant the Big Cheese Wrigleyville, LLC (Big Cheese), where partners Rocky Aiyash (a principal of Bara), Michael Stadnicki (a principal of Big Cheese), and third-party

_____

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

defendant Travis Burke agreed to build out the commercial space to accommodate a new concept restaurant. The three men had an oral partnership agreement. Based on their agreement, Big Cheese entered a 10 year lease with 3401 in November 2013 and hired Bara to perform the construction work. The restaurant opened on April 4, 2014.

¶ 7    On April 16, 2014, the Chicago Transit Authority (CTA) issued a written notice of eminent domain for the property. By July 2014, Big Cheese was in default on the lease, and 3401 initiated eviction proceedings. On August 15, 2014, Bara recorded its mechanics lien claim against the property in the amount of $98,640. The lien claim stated that Bara last performed work on the property on or about June 17, 2014. Rocky's son, Matthew Aiyash, signed the lien claim on behalf of Bara. By September 2014, Big Cheese had closed and vacated the property. Matthew removed all the fixtures and improvements installed by Bara from the restaurant premises and stored them in Bara's warehouse.

¶ 8    Meanwhile, on August 27, 2014, Bara filed a complaint against Big Cheese and 3401 to foreclose on its mechanics lien. In the alternative, Bara made a *quantum meruit* claim against 3401, based on 3401's alleged unjust enrichment through Bara's installment of fixtures and other improvements to the property. Bara attached to its complaint an invoice/contract signed by Stadnicki and dated December 15, 2013, which indicated that Bara had billed Big Cheese $377,041.28 for services and labor provided at the project. Bara alleged that Big Cheese had paid only $278,401.28 to date and the amount remaining due to Bara was $98,640 plus interest. Counsel Vivek Jayaram of Jayaram Law, Inc., signed the complaint on behalf of Bara.

¶ 9    In their answers, both Big Cheese and 3401 denied any liability under the complaint and alleged that the invoice dated December 15, 2013, and the lien claim were fabrications. Big Cheese

admitted that it paid Bara $278,401.28. 3401 also filed affirmative defenses, alleging that the lease was breached, 3401 did not knowingly permit construction by Bara at the property, and Bara's mechanics lien constituted constructive fraud because the charges alleged therein were overstated and significantly inflated. In addition, 3401's counterclaim against Bara alleged conversion for Bara's unauthorized removal of the fixtures, common law fraud on the grounds that the content of the mechanics lien and complaint were false, and slander of title. 3401's counterclaim against Big Cheese alleged its breach of the lease and failure to pay rent. Furthermore, 3401's third-party claim against Travis was based on his guarantee of the lease.

¶ 10    The bench trial began in September 2019 and was held on five days over a four month period. Rocky did not appear at the trial due to health issues and instead testified at a video evidence deposition. He testified regarding two invoices that were issued by Bara and dated September 9, 2013, and December 15, 2013. The September 9, 2013 invoice was designated as a proposal, was not signed, and totaled $169,210.80. According to Rocky, that document had been exchanged as an initial proposal beginning in September 2013 between him, Travis and Stadnicki during their negotiations. Then, when they finally resolved the terms, Big Cheese accepted the revised proposal of $377,041.28, as reflected in the invoice designated as a contract, which Stadnicki signed and dated December 15, 2013. Rocky testified that the work under the construction contract was completed on June 28, 2014. He also testified that he authorized his son Matthew to sign the mechanics lien notice and claim and its attendant affidavit. According to Matthew's testimony, he did not have any independent knowledge of the facts asserted in the lien.

¶ 11    Stadnicki testified that the September 9, 2013 invoice/proposal for $169,210.80 constituted the final proposal and agreed price for the work to be performed by Bara. Stadnicki also testified

that the construction work was completed by the restaurant's opening day, April 4, 2014, and Bara had been paid in full by April 2014. Stadnicki explained that it would have been impossible to obtain city permits to operate the restaurant and open it for business unless the construction work set forth in the September 2013 invoice/proposal, which Stadnicki identified as the proposal that controlled the work to be performed, was completed. He also testified that after the CTA issued its eminent domain notice in April 2014, Rocky cajoled him into signing and backdating the $377,041.28 invoice/contract to December 15, 2013, to improve their respective positions in obtaining compensation from the CTA's eminent domain taking. Stadnicki testified that the prices listed in the backdated December 2013 invoice/contract were greatly inflated from the prices agreed upon in 2013.

¶ 12    Rocky's emails were introduced into evidence. The emails showed that on June 4, 2014, he emailed to his partners evidence that Bara had been paid for all but $634 of the general contractor work. Also around June 2014, Rocky made claims to his partners, Stadnicki and Burke, that Bara had not received value for its complete construction work. In early July 2014, Rocky wrote to 3401 on behalf of Big Cheese, asking for a rent reduction because the business was "on life support" due to the CTA's eminent domain notice.

¶ 13    Stadnicki's spreadsheet of construction job charges and payments was introduced into evidence.[2] This document was created based on the data set forth in the partners' joint bank account, to which Rocky had access. The charges and payments listed on the spreadsheet precisely tracked the September 2013 invoice/proposal. According to the spreadsheet, the last payment to Bara was made on April 4, 2014, which coincided with Stadnicki's testimony that Bara finished

_____

[2] The spreadsheet is not included in the record on appeal.

the construction work on April 4, 2014. There was no record showing that Bara performed any construction work after April 4, 2014.

¶ 14    On June 29, 2020, the trial court entered a decision that (1) ruled against Bara and in favor of Big Cheese and 3401 on all counts of Bara's complaint, (2) found constructive fraud by Bara and awarded 3401 and Big Cheese attorney fees and costs under section 17(c) of the Mechanics Lien Act (Lien Act) (770 ILCS 60/17(c) (West 2020)), (3) denied 3401's counterclaims against Bara for conversion, common law fraud and slander of title, (4) found in favor of 3401 and against Big Cheese on 3401's counterclaim for unpaid rent, plus attorney fees, (5) found in favor of 3401 and against Travis on 3401's third-party complaint and ruled that Travis was liable for 12 months of rent, and (6) denied, without prejudice, 3401's request for sanctions under Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018) against Bara and its counsel, nonparty appellees Vivek Jayaram and Jayaram Law, Inc.

¶ 15    Specifically, regarding Bara's mechanics lien claim, the trial court found that Bara failed to prove that it completed the work after April 15, 2014, and thus failed to comply with the statutory requirement to either record its lien claim or bring an action to enforce the lien within four months of the completion of the work. Also, Bara could not recover on a theory of unjust enrichment/*quantum meruit* because a contract governed the work performed by Bara.

¶ 16    Regarding 3401's constructive fraud defense to the mechanics lien claim, the court found that Bara's filing of the lien claim constituted constructive fraud. Specifically, the court found that the September 2013 invoice/proposal for $169,210.80 controlled the charges for and scope of the construction work and Rocky knew it. Accordingly, the court concluded that Rocky, with the intent to defraud, fabricated the backdated December 2013 invoice/contract, with its across-the-board

inflated line item costs, shortly before Bara recorded the lien claim for the sole purpose of posing as evidence to extract an additional $98,640 payment for Bara far in excess of the $169,210.80 actual contract price.

¶ 17    Regarding 3401's conversion counterclaim, the court found that 3401 failed to present any evidence of the value of the alleged converted property. 3401 also failed to categorize the items as either trade fixtures and personal property, which Big Cheese was entitled to keep, or real estate fixtures.

¶ 18    Regarding 3401's common law fraud counterclaim, the court found that 3401 failed to establish the essential element of damages to recover from Bara since the trial court's ruling on the mechanics lien claim and 3401's affirmative defense of constructive fraud had "saved" 3401 from being defrauded of $98,640 and the court had awarded 3401 attorney fees and costs. The court also found that 3401's failure to prove special damages was fatal to its slander of title counterclaim.

¶ 19    Regarding 3401's request for Rule 137 sanctions based on Bara's mechanics lien claim, which request 3401 raised for the first time in closing arguments at trial, the trial court denied the request without prejudice because 3401 failed to file a petition stating with specificity the grounds for the imposition of Rule 137 sanctions and no evidentiary hearing on the claim was pursued. The trial court added that 3401 also failed to provide sufficient evidence to establish a Rule 137 violation because, even though Bara filed an intentionally inflated statement of charges to support its mechanics lien claim, which act constituted constructive fraud, that inflated statement was signed and dated by Stadnicki and only his testimony at trial—*i.e.*, that he signed and backdated the invoice at Rocky's insistence—established the lien as fraudulent. 3401 failed to offer any proof

that Stadnicki could not have testified that either (1) the September 2013 invoice/proposal was an understatement of Bara's costs since Rocky, a principal of Bara, was also a partner of and investor in Big Cheese and thus could have recouped Bara's actual construction costs through the future profitability of the Big Cheese business venture, or (2) Stadnicki signed the December 2013 invoice/contract to acknowledge the real costs of the project to Bara. Such evidence would have supported Bara's lien claim, detracted from 3401's constructive fraud defense, and absolved Bara and its counsel of any Rule 137 violation.

¶ 20    Regarding 3401's and Big Cheese's claims for attorney fees for prevailing on the mechanics lien claim, the trial court, in the exercise of its discretion, ruled that attorney fees awards against Bara were appropriate because Bara's filing of its lien based on the fabricated and backdated December 2013 invoice was without just cause or right given (1) the deliberate nature of Rocky's creation of that invoice after Bara had completed the construction work and after the CTA had issued the eminent domain notice, and (2) Rocky's inducement of Stadnicki to sign and backdate that invoice so that more money could be collected from other parties for the already completed construction work.

¶ 21    Regarding 3401's pretrial motion for Rule 137 sanctions against Bara, which was based on Bara's emergency motion to continue the trial because Rocky was scheduled for cancer treatment in Texas on the date trial was to commence, the trial court denied the motion for sanctions, finding that 3401 failed to prove that Rocky's medical appointment in Texas was either false or a subterfuge. Moreover, the trial court had denied Bara's emergency continuance motion because it lacked any affidavits pursuant to Illinois Supreme Court Rule 231 (eff. Jan. 1, 1970).

¶ 22    On July 29, 2020, 3401 moved posttrial for Rule 137 sanctions against Bara, Rocky, his son Matthew, attorney Jayaram, and Jayaram Law, Inc., arguing that the litigation was predicated on (1) false allegations that Bara was owed $98,640 for the construction work and had completed the work in June 2014 so that its mechanics lien claim would be deemed timely filed, and (2) Rocky's fabricated December 2013 invoice/contract, which he used to support his knowingly false mechanics lien claim to receive a payment far in excess of the actual contract price.

¶ 23    On November 13, 2020, the trial court denied 3401's posttrial motion for Rule 137 sanctions, stating that "[f]raud is a high bar to prove" and 3401's motion failed to prove its allegations of fraudulent litigation. Specifically, regarding Bara, the trial court emphasized that although the false representation of certain line items and other inflated costs in the December 2013 invoice/contract resulted in the court's constructive fraud finding, the court made no intentional fraud finding. The court explained that it was plausible that Bara's September 2013 unsigned invoice/proposal merely represented the decision of the Big Cheese partners to proceed with their business venture on a handshake basis to minimize costs, knowing that the actual costs of Bara's construction work could be much higher. Then, when it became clear that Bara would not recoup its actual construction costs based on Rocky's status as a partner and investor of Big Cheese, Bara tendered to Stadnicki a revised contract proposal that intended to incorporate the real cost of constructing the restaurant, which revised proposal Stadnicki signed and backdated. However, instead of carefully repricing the job, Rocky, whose business records were generally unorganized and unprofessional, simply inflated the original line items of the earlier September 2013 invoice/proposal until the total reached the amount of the actual cost of Bara's construction work. Notwithstanding Rocky's careless repricing of the job, no evidence at trial indicated that

either Rocky, Stadnicki or Burke thought at the time that $377,041 was an absurd, outlandish or grossly inflated price for the construction work Bara performed compared to the $278,401 amount the partners had contemplated in their handshake deal.

¶ 24    Regarding Rocky, the trial court stated that Rule 137 sanctions could not be imposed on him because 3401 failed to allege that he signed any pleading, motion or other document filed in this case. Regarding Matthew Aiyash, 3401 failed to establish that he signed the lien certification without a reasonable inquiry and for an improper purpose where the evidence showed that he believed he was a managing member of Bara, he relied heavily on his father regarding business matters, and no evidence showed that it was unreasonable for him to rely on his father's information.

¶ 25    Regarding Jayaram and Jayaram Law, Inc., the court concluded that 3401 failed to prove that counsel had no reasonable basis to file the mechanics lien complaint or that counsel failed to conduct a reasonable prefiling inquiry. The court stated that there was no proof that Jayaram "did not assess the case in some fashion along the lines of the [trial court's above] discussion of the history of the deal and the plausible cost." According to Jayaram's response, he was presented with a signed contract—*i.e.*, the December 2013 invoice/contract—and Rocky's statement that the electrical work was completed in June 2014. The evidence did not show Jayaram knew at the time he filed the mechanics lien claim that the December 2013 invoice/contract was backdated.

¶ 26    3401 appeals the trial court's November 13, 2020 order denying its posttrial motion for Rule 137 sanctions against Bara, Rocky, Jayaram and Jayaram Law, Inc.

¶ 27                                    II. ANALYSIS

¶ 28     The purpose of Rule 137 is to prevent the filing of false and frivolous lawsuits. *Sanchez v. City of Chicago*, 352 Ill. App. 3d 1015, 1020 (2004). To fulfill its purpose, Rule 137 provides for sanctions against attorneys and parties who sign pleadings but upon filing of same, have failed to do so upon a reasonable prefiling inquiry as to whether it is well grounded in fact and warranted by existing law or a good faith argument for change of existing law. Ill. S. Ct. R. 137 (eff. Jan. 1, 2018). The filing must not have been interposed for some improper purpose, such as harassment, unnecessary delay or needless imposition of cost. *Id*. As a penal provision, Rule 137 is construed strictly. *Kensington's Wine Auctioneers v. John Hart Fine Wine, Ltd.*, 392 Ill. App. 3d 1, 18 (2009). Rule 137 applies to pleadings and, accordingly, it does not authorize sanctions for all violations of court rules and acts of misconduct. *Krautsack v. Anderson*, 223 Ill. 2d 541, 562 (2006). To determine whether conduct violates the rule, the court must employ an objective standard and determine what was reasonable at the time the party filed its pleading. *Id*. The party seeking sanctions bears the burden of proof. *Technology Innovation Center, Inc. v. Advanced Multiuser Corp.*, 315 Ill. App. 3d 238, 243-44 (2000).

¶ 29     The decision to grant or deny sanctions under Rule 137 is entrusted to the sound discretion of the trial court, to be overturned only when it appears from the record the court abused its discretion. *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 487 (1998). "A court abuses its discretion when it acts arbitrarily, without the employment of conscientious judgment, exceeds the bounds of reason and ignores recognized principles of law; or if no reasonable person would take the position adopted by the court." *Stiffle v. Baker Epstein Marz*, 2016 IL App (1st) 150180, ¶ 44. A trial court's determination is afforded considerable deference, but it does not preclude a

reviewing court from independently reviewing the record and finding an abuse of discretion if the facts warrant. *Pritzker v. Drake Tower Apartments, Inc.*, 283 Ill. App. 3d 587, 590 (1996). When reviewing a decision on a motion for sanctions, the primary consideration is whether the trial court's decision was informed, based on valid reasoning, and follows logically from the facts. *Thomas Hake Enterprises, Inc. v. Betke*, 301 Ill. App. 3d 176, 182 (1998).

¶ 30    Here, 3401 argues the trial court abused its discretion because Bara, Rocky and their counsel intentionally or recklessly pleaded false matters (*i.e.*, used the backdated December 2013 invoice/contract to substantiate their claim of the alleged real cost of the work done by Bara) and the trial court's explanation for their conduct was not plausible. Specifically, 3401 contends that Rocky intentionally falsified the September 2013 invoice/proposal by adding charges for work Bara never performed and inflating the line item prices, the general contractor fee, and the bottom line. Rocky also convinced Stadnicki to sign and backdate the invoice so it would look like a proposal that had been prepared and signed before the work commenced rather than an invoice issued after the work had been completed in April 2014 and paid in full.

¶ 31    3401 contends that Rocky then intentionally used the backdated invoice as the basis to support his false mechanics lien claim against 3401's property to attempt to extract an additional $98,640 payment for Bara. 3401 argues that this fraud was committed by Rocky on behalf of Bara with the assistance of Bara's counsel and has resulted in several years of unnecessary litigation for 3401. 3401 asserts that the trial court's rulings are inconsistent and do not follow logically from the facts because the trial court found that Rocky and Bara committed intentional fraud but failed to impose Rule 137 sanctions on them based on their filing of a false and frivolous lawsuit.

¶ 32    We disagree. Although the trial court had granted 3401 attorney fees and costs under the Lien Act on 3401's affirmative defense of constructive fraud, the court found that 3401 was not entitled to sanctions under Rule 137 because 3401 did not meet its much higher burden to prove actual fraud.[3] Specifically, the trial court concluded that 3401 failed to provide sufficient evidence to establish a Rule 137 violation because proof of the fabrication was established at trial, not at the time of filing. Moreover, Rule 137 must be strictly construed, and 3401 failed to allege that Rocky signed any pleading, motion or other document in the case. Even though Bara filed an intentionally inflated statement of charges to support its mechanics lien claim, which act constituted constructive fraud, that inflated statement was signed and dated by Big Cheese's principal, Stadnicki, and the evidence failed to establish that Stadnicki could not have testified that either (1) the September 2013 invoice/proposal was an understatement of Bara's costs since Rocky, a principal of Bara, was also a partner of and investor in Big Cheese and thus could have recouped Bara's actual construction costs through the future profitability of the Big Cheese business venture, or (2) Stadnicki signed the December 2013 invoice/contract to acknowledge the real costs of the project to Bara. Such evidence would have absolved Bara and its counsel of any Rule 137 violation.

¶ 33    The trial court explained that it was plausible that Bara's September 2013 unsigned invoice/proposal merely represented the decision of the Big Cheese partners to proceed with their business venture on a handshake basis to minimize costs, knowing that the actual costs of Bara's

---

[3] Constructive fraud is any act, statement, or omission that amounts to positive fraud or that courts construe as fraud because of its detrimental effect upon public interests and public or private confidences. *People ex rel. Hawthorne v. Bartlow*, 111 Ill. App. 3d 513, 518 (1983). While actual fraud includes among its elements a false statement of material fact, known or believed to be false by the party making the statement, and an intent to induce the other party to act (*Dloogatch v. Brincat*, 396 Ill. App. 3d 842, 847 (2009)), constructive fraud "requires neither actual dishonesty, nor intent to deceive, being a breach of legal or equitable duty which, irrespective of moral guilt of the wrongdoer, the law declares fraudulent because of its tendency to deceive others" (*Bartlow*, 111 Ill. App. 3d at 518).

construction work could be much higher. Then, when it became clear that Bara would not recoup its actual construction costs based on Rocky's status as a partner and investor of Big Cheese, Bara tendered to Stadnicki a revised contract proposal that intended to incorporate the real cost of constructing the restaurant, which revised proposal Stadnicki signed and backdated. However, instead of carefully repricing the job, Rocky, whose business records were generally unorganized and unprofessional, simply inflated the original line items of the earlier September 2013 invoice/proposal until the total reached the amount of the actual cost of Bara's construction work. Notwithstanding Rocky's careless repricing of the job, no evidence at trial indicated that either Rocky, Stadnicki or Burke thought at the time that $377,041 was an absurd, outlandish or grossly inflated price for the construction work Bara performed compared to the $278,401 amount the partners had contemplated in their handshake deal. The trial court's November 13, 2020 order denying Rule 137 sanctions is consistent with the court's findings in its June 29, 2020 order that Bara was liable for constructive fraud but not liable for common law fraud.

¶ 34    Regarding 3401's request for sanctions against Bara and Rocky's counsel, Rule 137 requires an attorney to make a reasonable inquiry into the law and facts before filing a complaint. The trial court found that, at the time of filing, counsel was presented with a signed contract and Rocky's statement that Bara completed the electrical work in June 2014. The court ruled that no evidence indicated that counsel either failed to conduct a reasonable inquiry into the factual basis of Bara's mechanics lien claim before filing the complaint or knew the December 2013 invoice/contract was backdated. Moreover, counsel could have assessed the case in the same manner as the trial court's discussion of the history of the partners' business deal and the plausible cost. Also, it was not reasonable to require counsel, prior to filing the complaint, to have had full

knowledge of Big Cheese's knowledge of the backdated invoice/contract, which was revealed only after Stadnicki testified at trial.

¶ 35    3401's posttrial motion for Rule 137 sanctions was completely based on facts that were revealed at the trial and discussed by the trial court in its written decision. While additional facts may have been discovered throughout the course of discovery in this action, 3401 asks the court to sanction a lawyer for filing a complaint that ultimately was not proven at trial. 3401 engages in hindsight and bases its argument on knowledge learned only at trial and after having the benefit of receiving the trial court's findings. See *Lewy v. Koeckritz International, Inc.*, 211 Ill. App. 3d 330, 334 (1991) ("in evaluating the conduct of an attorney or party who signs a document ***, a court must determine what was reasonable to believe at that time rather than engage in hindsight"). It is not reasonable to require counsel when he signed and filed the complaint to have had full knowledge of Stadnicki's testimony made at trial after extensive discovery.

¶ 36    Furthermore, the only proof establishing that the lien was fraudulent was Stadnicki's trial testimony that he backdated the December 2013 invoice/contract, but he could have testified otherwise. It was possible that evidence could have been presented at trial that would have absolved Bara and Rocky of constructive fraud. The trial court denied 3401's request for Rule 137 sanctions in two well-reasoned and detailed orders based on extensive briefing and hearings, and 3401 points to no new evidence in the record to support the proposition that the trial court should have held an additional hearing to revisit its previously issued and well-reasoned denial of 3401's request for sanctions.

¶ 37    Our review of the record establishes that the trial court's decision was informed, based on valid reasoning, and follows logically from the facts. We conclude that the trial court did not abuse its discretion when it denied 3401's posttrial motion for Rule 137 sanctions.

¶ 38                                III. CONCLUSION

¶ 39    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 40    Affirmed.